# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC 19-238 |
| | * | |
| ANTHONY PENALOZA, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ****** | | |

## MEMORANDUM OPINION

The Court has received Defendant's Motion To Reconsider Pretrial Detention ("Defendant's Motion"), ECF No. 72. The Court has reviewed Defendant's Motion, the Opposition, and Reply thereto. ECF Nos. 73 and 75. No hearing is deemed necessary. Local Rules 105.6 and 207 (D. Md.). The Court hereby DENIES Defendant's Motion.

### I.  Relevant Procedural History

Defendant now seeks his fourth review of this Court's orders of detention. His initial order of detention was entered following a hearing on May 12, 2019. ECF No. 6. Following his indictment in October 2019, the Honorable Theodore D. Chuang reviewed the order of detention and affirmed. ECF No. 39. On November 27, 2019, a third review before this member of the bench resulted in another order of detention. ECF No. 49. Defendant now comes with a new battle plan. The specter of contracting the Corona virus (also known as COVID-19) due to his required detention at the Correctional Treatment Facility ("CTF").

Defendant has been charged by way of indictment with a non-violent offense, namely possession of a firearm and ammunition by a convicted felon. ECF No. 32. But there is clearly more here than a mere status offense. The Government has argued time and again that

Defendant has threatened others in public with the use of a firearm. The Government contends there are two separate incidents, occurring nearly two weeks apart, which are strongly indicative of Defendant's leanings toward violence. Understandably, Defendant takes issues with the allegations, but the Court has previously and continues to accept the factual underpinnings proffered by the Government. See Gov't Opp'n to Def.'s Mot. for Recons. 3-5. Again, the proffer is strong, and the suggestions of dangerousness to the community are palpable.

At the conclusion of the original detention hearing, the Court's Order attempted to memorialize the extensive factual findings. The Court concluded "by clear and convincing evidence that no condition or combination of conditions or release will reasonably assure the safety of any other person and the community." ECF No. 6. The Court went further to note that "the weight of evidence against the defendant is strong"; that he is "subject to [a] lengthy period of incarceration if convicted"; that he has a poor "prior criminal history"; that he has participated "in criminal activity while on probation, parole or supervision"; that he has a "history of violence or use of weapons"; and that he has previously failed "to appear in court as ordered." Id. At no time during Defendant's quest for freedom has there been a meaningful challenge to the Government's case, or the other factors under the Bail Reform Act. 18 U.S.C. 3141, et. seq. On three prior occasions, Defendant had the opportunity to attack the proffer. The Court will not rehearse the factors here but will rely on the findings repeated three times earlier on the record, including the findings of Judge Chuang upon de novo review. ECF No. 39.

Of necessity, Defendant's strategy has changed. The issue now can be best described as asking, "Has the presence of the Corona virus changed the calculus of detention?" In Mr. Penaloza's circumstance, at this hour, the presence of the virus does not mean that he should be released.

## II. The COVID-19 Pandemic

Under the Bail Reform Act the Court is required to consider a host of factors which might inform the question of detention, including changed circumstances.

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). The presence of the Corona virus creates a "material bearing" on the issue of whether there are conditions of release that can protect the community from the danger that Defendant presents. Yet, this Court has stated that the mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. See United States v. William Bilbrough, IV, TDC 20-33 (D. Md. Mar. 20, 2020) (J. Sullivan); and United States v. Julius Williams, PWG 13-544 (D. Md. Mar. 24, 2020) (J. Day).

Every day, the effects of the virus become more complicated. At the time of the filing of Defendant's Motion, "no inmate or staff member at CTF is known to have tested positive for COVID-19," though a number of inmates are under quarantine for suspected exposure. Def.'s Mot. 2. Now, days later, the Court is aware of positive test results for the Corona virus. There is still no indication that Defendant has been in contact with any detainees who have been diagnosed with the virus. It is not for the Court to speculate where the "fine line" might be crossed where the scales weigh more favorably toward release. But on this record, it has not been crossed.

Now that the inevitable appearance of the virus in the detention facility has occurred, the Court must still balance the factors of the Bail Reform Act, with the overlay of concerns about

the health and safety of Defendant and the community at large. Here, the Government correctly states that "[n]otwithstanding the COVID-19 outbreak, that factor does not weigh heavily, if at all, in favor of the Defendant's release. . . . [H]e is not seeking release based on his *actual* 'physical and mental condition.' Instead he relies solely on the *possibility* of becoming infected." Gov't Opp'n to Def.'s Mot. for Recons. 8.

The Government has set forth specific efforts employed by CTF for the purpose of protecting Defendant and the detainee population in general. Id. at 8-9. Defendant does not challenge the representations of the Government regarding these efforts. He merely recites conclusory language that "the measures are not sufficient to protect him." Reply to Gov't Opp'n to Def.'s Mot. for Recons. 1. Defendant's counsel notes that it is "unknown" by him what particular measures medical staff are taking for Defendant, and that it is "unclear" whether the quarantine procedures will work. Id. at 2. Like Defendant's medical history and vulnerability, more is needed for a person required to be detained three times over, to obtain a reversal of fortune.

The only other unique fact expressed by Defendant is that he has received treatment on three occasions for a heart murmur. Defendant has not indicated when said treatment occurred, what said treatment may be consisted of, or why he contends that he is at an increased risk of serious illness if exposed to the virus. For example, in United States v. Bilbrough, TDC 20-33, (D. Md. Mar. 20, 2020) (J. Sullivan) the Court said that "experts on COVID-19 have stated that individuals with diabetes are at a higher risk of experiencing more serious complications if infected with the virus." Id. at 6. Defendant offers no expert opinions here. Publicly available medical literature repeatedly indicates that not all heart murmurs are the same, and many are lifetime conditions never requiring medical intervention. See Heart Murmurs, The Mayo Clinic,

https://www.mayoclinic.org/diseases-conditions/heart-murmurs/symptoms-causes/syc-20373171 (last visited Mar. 31, 2020); Heart Murmur, The National Heart, Lung and Blood Institute, https://www.nhlbi.nih.gov/health-topics/heart-murmur (last visited Mar. 31, 2020).  While mindful of the fact that COVID-19 has an asymptomatic incubation period, the Court requires more than the mere speculation here about Mr. Penaloza's exposure and/or vulnerability.

### III.    Conclusion

Defendant has still failed to demonstrate that the changed circumstances created by the COVID-19 crisis sufficiently tips the scales of detention to reverse the earlier decisions by the Court.   Accordingly, Defendant's Motion is denied.


March 31, 2020                                          /s/
                                            Charles B. Day
                                            United States Magistrate Judge