IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **CRIMINAL NO. TDC-19-238** |
| **ANTHONY PENALOZA,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |

**<u>MEMORANDUM OPINION</u>**

The Court has received Defendant's Motion to Reconsider Detention Status ("Defendant's Motion"), ECF No. 78. The Court has reviewed Defendant's Motion, the opposition, and reply thereto. ECF Nos. 79 and 80. No hearing is deemed necessary. Local Rules 105.6 and 207 (D. Md.). The Court hereby DENIES Defendant's Motion.

**I.   Relevant Procedural History**

Defendant now seeks his fifth review of this Court's orders of detention. His initial order of detention was entered following a hearing on May 12, 2019. ECF No. 6. Following his indictment in October 2019, the Honorable Theodore D. Chuang reviewed the order of detention and affirmed. ECF No. 39. On November 27, 2019, a third review before this member of the bench resulted in another order of detention. ECF No. 49. Most recently, on April 1, 2020 this Court denied Defendant's Motion to Reconsider Pretrial Detention which was based on the novel Corona virus ("COVID-19"). ECF No. 76.

The facts of this case are set forth in detail in the Court's April 1, 2020 Memorandum Opinion ("Previous Memorandum"). ECF No. 76. The Court incorporates by reference the proffered facts surrounding Defendant's charge referenced in the Previous Memorandum. Of significance however, the Court stated in the Previous Memorandum:

> [A]t no time during Defendant's quest for freedom has there been a meaningful challenge to the Government's case, or other factors under the Bail Reform Act. On three prior occasions, Defendant had the opportunity to attack the proffer. The Court will not rehearse the factors here but will rely on the findings repeated three times earlier on the record, including the findings of Judge Chuang upon *de novo* review.

Previous Mem. 2 (citations omitted). Likewise here, the Court again will not rehearse the factors under consideration by way of the Bail Reform Act, but rely on the previous findings.

Defendant now seeks a second review of this Court's order of detention regarding changes due to COVID-19. In doing so, he is alleging that "the fast changing nature of the crisis and circumstances have changed so much in the three weeks since the Court denied [Defendant's] motion, it is appropriate to raise the issue again." Def.'s Mot. 1.

**II.     Analysis**

Defendant contends that his release is necessary due to the outbreak of COVID-19 and the D.C. Department of Correction's ("DOC") failure to adequately address the spread of the virus. *Id*. at 1–3. Defendant avers that it is no longer the case that Defendant has not been in contact with inmates who have tested positive for COVID-19 because Defendant has had numerous contacts with an inmate on Defendant's unit that has tested positive. *Id.* at 2. According to Defendant, "he has been treated on three occasions in his life for a heart murmur which could put him at greater risk of complications from coronavirus." *Id.* at 1–2. Defendant also avers that his access to counsel has also been affected due to inconsistent access to legal calls and the inability to review "discovery or other documents" by telephone. *Id*. at 5.

The Government avers that Defendant is a danger to the community, therefore should not be released. Gov't Opp'n. to Mot. to Recon. Det. Status ("Gov't Opp'n") 1, ECF No. 79. The Government also argues that the "DOC continues to evolve its policies and procedures to address

2

the COVID-19 pandemic, and it is now being closely supervised . . ." therefore, release is not warranted. *Id.* at 2. According to the Government, the evolution of the DOC's policies and procedures in accordance with guidance from the D.C. Department of Health and the Centers for Disease Control, along with the Honorable Kollar-Kotelly's order in *Banks v. Booth*, No. CKK-20-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020), "ensure[s] adequate medical care for those infected" and "avoid[s] further transmission of COVID-19." *Id.* at 2. The Government contends that Defendant fails to show a "compelling reason" under 18 U.S.C. § 3142(i) to warrant Defendant's temporary release. *Id.* at 9. The Government argues that Defendant's alleged limited access to counsel does not warrant release because Defendant "will have the ability to communicate with counsel going forward, if he has not already . . . ." *Id.* at 13. The Government further avers that the "DOC has previously acknowledged that there will be delays in processing legal calls, due to the increase in legal call requests, but has noted that diligent efforts are being made to accommodate all requests under the circumstances." *Id.* at 14. The Government argues that "[a]s such [Defendant] continues to retain his right to speak to his counsel by phone, which is a suitable alternative at this time in light of the generally-accepted nationwide mandate against in-person meetings." *Id*. at 14 (citations omitted).

Under the Bail Reform Act, a detention hearing determination:

> [M]ay be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added).  In addition, "[a] judicial officer may … permit the temporary release of the person, in the custody of a United States marshal or another appropriate person … for [a] compelling reason."  18 U.S.C. § 3142(i).

### a. 18 U.S.C. § 3142(f) "Material Bearing" Inquiry

The presence of the COVID-19 creates a "material bearing" on the issue of whether there are conditions of release that can protect the community from the danger that Defendant presents.  Yet, this Court has stated that the mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused.  *See United States v. Terrell West*, No. ELH-19-364, 2020 WL 1820095 (D. Md. Apr. 10, 2020) (denying the defendant's motion despite testing positive for COVID-19); *United States v. Bernadette Attia*, PWG-19-193 (D. Md. Apr. 13, 2020) (denying the defendant's motion even though he suffered from asthma and migraines); *United States v. Damien Smith*, No. 20-cr-00047-SAG, 2020 WL 1864587 (D. Md. Apr. 14, 2020) (denying the defendant's motion even though he suffered from asthma); *United States v. Deante Duckett*, No. PWG-19-229 (D. Md. Apr. 17, 2020) (denying the defendant's motion even though he suffered from bacterial infections); *United States v. Deion Chase*, No. JKB-19-0473, 2020 WL 2319132 (D. Md. May 11, 2020) (denying the defendant's motion even though he suffered from high blood pressure); *United States v. Jawuan Bolling*, No. 19-cr-00506-RDB-6, 2020 WL 2395608 (D. Md. May 11, 2020) (denying the defendant's motion which relied upon the generalized risk of exposure and contraction of COVID-19); *United States v. Darius Wilder*, No. GJH-17-528, 2020 WL 2319136 (D. Md. May 11, 2020) (denying the defendant's motion even though he had a heart condition, polycystic kidney disease, stage 5 chronic kidney disease, and hypertension).

In the Previous Memorandum the Court stated:

> There is still no indication that Defendant has been in contact with
> any detainees who have been diagnosed with the virus.  It is not for
> the Court to speculate where the "fine line" might be crossed
> where the scales weigh more favorably toward release.  But on this
> record, it has not been crossed.

Previous Mem. 3.  Defendant claims that the circumstances in this case have changed because "after the previous motion was decided, an inmate on that unit tested positive for coronavirus." Def.'s Mot. 2.  The fact that an inmate has tested positive for COVID-19 or has been in contact with an inmate who has tested positive, does not automatically warrant remand.  *West*, 2020 WL 1820095, at *1 (denying the defendant's motion despite testing positive for COVID-19).  The Court, in the Previous Memorandum, merely stated that when weighing the factors under the Bail Reform Act with the evidence provided by Defendant, release was not warranted.  The Court did not set forth a bright-line test stating that if an inmate has been in contact with another inmate who has tested positive, release is warranted.  And it does not do so here.

Defendant also is relying upon Judge Kollar-Kotelly's decision in *Banks v. Booth* in demonstrating the DOC's failure in properly addressing the spread of COVID-19.  Def.'s Mot. 3–4.  After a review conducted by independent investigators, Judge Kollar-Kotelly found that there was a likelihood of success on the merits of the claim that the conditions of confinement violated the United States Constitution by failing to adequately protect the detainees' health and safety.  *Banks*, 2020 WL 1914896, at *6–11.  According to the investigators, 65 out of approximately 1,020 inmates tested positive for COVID-19.  *Id.*  As later commented upon by Judge Chuang of this Court:

> . . . [T]he D.C. Jail had failed to implement contact tracing when
> correctional staff tested positive; had been slow to respond to
> inmates displaying symptoms of COVID-19 such as fever and
> coughing; did not properly seal off quarantined inmates from the
> general population and require proper use of masks and gloves for
> those present in the quarantine unit; and left inmates in isolation

5

> for having tested positive in draconian conditions without access to showers or laundry services. It also found that D.C. Jail had acted slowly to, and had failed to, operationalize and enforce social distancing measures needed to avoid an unreasonable risk to the health of detainees, as illustrated in part by the fact that it allowed 40 inmates to congregate three weeks into the pandemic. The court also found that there were likely errors in the use of thermometers to screen income[ing] visitors and staff, and some housing units lacked sufficient cleaning supplies and sufficient guidance on how to sanitize that resulted in 'challenges with cleanliness' outside of inmates' cells. The court therefore concluded that the evidence supported the conclusion that D.C. Jail acted with deliberate indifference to inmate health and safety because it was aware of the risks of COVID-19 but 'disregarded those risks by failing to take comprehensive, timely, and proper steps to stem the spread of the virus.' Although the court did not order the immediate release or transfer of detainees, it ordered as a first step certain remedial actions, including that the D.C. Jail improve the triage process for suspected cases of COVID-19, provide proper cleaning supplies to each unit in the facility, and implement social distancing measures.

*United States v. Demetrius Keaton*, TDC-18-215 (Apr. 23, 2020) (internal citations omitted). The Court agrees with Defendant that the revelations from the investigators in *Banks* "cast[ed] doubt on the Government's [previous] proffers about conditions in the [DOC] on which many decisions of this Court denying § 3142(i) motions have been based." Def.'s Mot. 4. However, despite the inaccurate information previously provided by the Government and the problems identified in *Banks*, it is important to note that Judge Kollar-Kotelly declined to grant the plaintiff's request for immediate release from the DOC. *Banks*, 2020 WL 1914896, at *15. She instead implemented a detailed list of corrective measures to address the deficiencies in the DOC's COVID-19 response. *Id*. at *13–15. The ruling did not require the Court to release every inmate. *Id.* at 15.

In this case, Defendant was charged with possession of a firearm and ammunition by a convicted felon. ECF No. 32. However, as stated in the Previous Memorandum:

> [T]here is clearly more here than a mere status offense. The Government has argued time and again that Defendant has threatened others in public with the use of a firearm. The Government contends there are two separate incidents, occurring nearly two weeks apart, which are strongly indicative of Defendant's leaning toward violence.

Previous Mem. 1–2. On this fifth review of the Court's order of detention, Defendant states "Although there are allegations that [Defendant] brandished a gun on two occasions, he adamantly denies these. The witnesses who made these allegations are not believed to have testified before the grand jury and did not testify at [Defendant's] motions hearing. The allegations are disputed." Def's Mot. 1. As stated in the Previous Memorandum, "[o]n three prior occasions, Defendant had the opportunity to attack the proffer." Previous Mem. 2. Defendant has now had five occasions to attack the proffer, however, instead of doing so, he simply denies the allegations. Def.'s Mot. 1. The Court is still not persuaded that Defendant is not a danger to the community. The Court found by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." ECF No. 6. Due to Defendant's "prior criminal history; participation in criminal activity while on probation, parole, or supervision, and history of violence or use of weapons," ECF No. 6, the Court still finds that the Government has met its burden to demonstrate Defendant is still a danger to the community. Nothing provided by Defendant on this record proves otherwise.

The Court also finds that there are no conditions of release that will reasonably assure Defendant's appearance as required. As stated at the original detention hearing: "[the] weight of evidence against [Defendant] is strong; [Defendant] is subject to lengthy period of incarceration if convicted; [Defendant has] participat[ed] in criminal activity while on probation, parole or supervision; and [Defendant has] prior failure[s] to appear in court as ordered." ECF No. 6. All

7

of these findings constitute Defendant as a flight risk.  With the pandemonium that surrounds COVID-19 and Defendant facing a lengthy period of incarceration if convicted, the risk of Defendant violating conditions of release is heightened.

As such, when weighing the problems currently faced in the DOC with whether there are reasonable conditions that will assure the safety of the community and Defendant's appearance before the Court, the Court finds that release is not warranted.  This is further supported by the May 7, 2020 recommendation of Troy Scott, the Supervisory U.S. Pretrial Services Officer who states: "I believe there is no condition or combination of conditions that can reasonably assure [Defendant's] appearance in Court and/or the safety of the community."  See U.S. Prob. and Pretrial Serv. Mem. 2, May 7, 2020.

### b.  18 U.S.C. § 3142(i) "Compelling Reason" Inquiry

The United States Court of Appeals for the Fourth Circuit has said the district court, when reviewing a defendant's request for relief under 18 U.S.C. § 3142(i) based on the COVID-19 should consider:

> [T]he severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. CCB-19-36, 2020 WL 2097692, at *1 (D. Md. May. 1, 2020) (citing the Fourth Circuit's order of remand); *Chase*, 2020 WL 2319132, at *3.  In considering relief under 18 U.S.C. § 3142(i) the Court considers "(1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others."  *Chase*, 2020

WL 2319132, at *3 (citing *United States v. Green*, No. JMC-19-539, 2020 WL 1446895, at *3 (D. Md. Apr. 15, 2020)).

First, the Court considers the original grounds for detention. As discussed above, Defendant was detained after being charged with possession of a firearm and ammunition by a convicted felon. However, especially alarming was that the Government argued that Defendant threatened others in public with firearms on two separate incidents. Previous Mem. 2. The Court found there was no condition or combination of release that would reasonably assure the safety of any other person in the community. ECF No. 6.

Next, the Court considers the specificity of Defendant's COVID-19 concerns. Defendant states that he suffers from a "heart murmur which could put him at greater risk of complications from coronavirus." Def.'s Mot. 2. The Court stated in the Previous Memorandum that "Defendant has not indicated when said treatment occurred, what said treatment may be consisted of, or why he contends that he is at an increased risk of serious illness if exposed to the virus . . . Defendant offers no expert opinions here." Previous Mem. 4. Despite the Court's clear indication that more evidence regarding Defendant's condition is needed, nothing new was provided on this record.[1] There is still no: (1) expert opinion regarding this matter; (2) medical records substantiating the claim; or, (3) details as to when the treatment occurred. Lastly, Defendant does not challenge the publicly available medical literature the Court cited to in the Previous Memorandum stating that "not all heart murmurs are the same, and many are lifetime conditions never requiring medical intervention." Prev. Mem. 4 (citing Heart Murmurs, The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/heart-murmers/symptms-causes/syc-20373171 (last visited Mar. 31, 2020); Heart Murmur, The National Heart, Lung and

---

[1] If Defendant requires the assistance of the Court to obtain medical records in the DOC's possession, Defendant must file a motion requesting such.

Blood Institute, https://www.nhlbi.nih.gov/health-topics/heart-murmur (last visited Mar. 31, 2020)).

The Court must now evaluate whether Defendant's release plan would mitigate or exacerbate Defendant's overall COVID-19 risks and the likelihood that Defendant's release would increase the COVID-19 risks to others. Defendant avers that his plan will protect him from exposure to COVID-19 while not endangering the community. Def.'s Mot. 5. Defendant further contends that his "brother Marco Penaloza and his significant other Katey Salazar are willing to serve as third-party custodians . . . [and] both have been previously screened by pretrial services." *Id.* "In either case [Defendant] will have the ability [to] remain at home and avoid exposure to coronavirus." *Id.* According to U.S. Probation and Pretrial Services, Defendant's brother advised that Defendant cannot reside with him at this time because his daughter is pregnant and considered a high risk due to COVID-19. *See* U.S. Prob. and Pretrial Serv. Mem. 2, May 7, 2020. However, Defendant's girlfriend has been pre-screened and would be a suitable placement if ordered. *Id.*

It is true that Defendant may expose his girlfriend and possibly whoever drives him home from the DOC to COVID-19. But, all in all, if Defendant abided by his conditions of release, as well as the state and local health guidelines, his overall plan could minimize the risk he would expose himself and others to COVID-19. Unfortunately, Defendant has shown from his past history that he has a propensity of violating the conditions of release while on probation, parole or supervision.[2] Given this history, the Court is not confident Defendant would abide by the

---

[2] Defendant has (1) failed to appear for four criminal matters; (2) had a poor adjustment to community supervision; to include probation violations and revocations; and (3) a history of rearrests while on community supervision. U.S. Prob. and Pretrial Serv. Mem. 2, May 7, 2020; *See also* ECF No. 6 (the Court finding that Defendant has participated in criminal activity while on probation, parole or supervision, and has previously failed to appear to court when ordered).

conditions of his release and not expose himself or others to COVID-19. *See Chase*, 2020 WL 2319132, at *6 (stating that the Court was skeptical a defendant would abide by conditions of release given the history of noncompliance).

The Court acknowledges the tragic effects of the COVID-19 outbreak in our communities and in the detention centers. But, as stated, the outbreak itself does not constitute a "compelling reason." Defendant failed to show that the effects of COVID-19 in the DOC, balanced against the risk of flight or possible danger to society, rises to the level of a "compelling reason" to warrant temporary release.

   c. **Right to Counsel**

According to Defendant, his access to counsel has been affected because his attorney is ill-advised to visit him. Def.'s Mot. 5. Defendant further states that "the procedure for requesting the calls has been changed several times and there is no ability to schedule calls for specific times to ensure that counsel does not miss them. Even when legal calls are available, there is no ability to review discovery or other documents." *Id.*

The right to counsel is not relevant to the Court's decision here under the Bail Reform Act. *United States v. Xavier Lee*, No. ELH-19-159, 2020 WL 1663364 (D. Md. Apr. 3, 2020) ("[W]hile access to counsel may be a separate argument, it is not a factor for the Court's determination under 18 U.S.C. § 3142(g)."). Nonetheless, the Court finds that given the state of affairs and the pandemic that has affected every aspect of our society, delays and intermittent availability to phone calls are to be expected. The "DOC has acknowledged that there will be delays in the processing of legal calls, due to the increase in legal call requests, but has noted that *diligent* efforts are being made to accommodate all requests under the circumstances." *Id.* (emphasis added). Further, the DOC director issued a directive "that all inmates, whether in

isolation or not, shall be allowed free daily 30-minute non-monitored legal calls with their attorney of record." Gov't Opp'n 13.

Given the nationwide mandate to remain quarantined at home, were Defendant to be released, there would still be obstacles preventing Defendant and his counsel from meeting face-to-face to review documents. Defendant states that it is ill-advised for his attorney to meet with him at the DOC, Def.'s Mot. 5, however, it is also ill-advised for anyone whether incarcerated or not, to meet face-to-face due to the spread of the virus.

### III. Conclusion

Defendant has not demonstrated that the changed circumstances created by the COVID-19 crisis sufficiently tips the scales of detention to reverse the earlier four decisions by the Court. Accordingly, Defendant's Motion is Denied.

June 2, 2020                                                     /s/
                                                           Charles B. Day
                                                           United States Magistrate Judge

CBD/hjd